**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**JENNIFER TRAFFORD**                                                               **PLAINTIFF**

**V.**                        **CASE NO. 4:10CV00937 BD**

**MICHAEL J. ASTRUE, Commissioner,
Social Security Administration**                                    **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jennifer Trafford brings this action for review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability and Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act (the "Act"). For reasons that follow, the decision of the Administrative Law Judge ("ALJ") is AFFIRMED.[1]

**I.**      **Procedural History:**

Ms. Trafford protectively filed her applications for DIB and SSI on April 5, 2006. She alleged disability since April 11, 2005, due to fibromyalgia, nerve problems, breathing problems, and depression. (Tr. 134)

After the Commissioner denied her applications at the initial and reconsideration stages of administrative review, Ms. Trafford requested a hearing before an ALJ. The

---

[1] The Honorable Penny M. Smith, Administrative Law Judge.

ALJ held a hearing on March 26, 2008, and Ms. Trafford appeared with her attorney. (Tr. 6-47)

At the time of the hearing, Ms. Trafford was a thirty-eight years old. She had an eleventh-grade education and had earned a General Educational Development ("GED") credential. (Tr. 14) Ms. Trafford had past relevant work as an office manager and detention officer. (Tr. 15-20, 72, 135)

At the hearing, the ALJ received testimony from Ms. Trafford and vocational expert Tanya Owen. On July 31, 2008, the ALJ issued a decision denying Ms. Trafford benefits. (Tr. 62-74) The Appeals Council denied Ms. Trafford's request for review on May 18, 2010. (Tr. 1-5) She filed the current Complaint for Review of Decision (docket entry #1) on July 16, 2010.

## II. Decision of the Administrative Law Judge:

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work[2]; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from

---

[2] If the claimant has sufficient residual functional capacity to perform past relevant work, the inquiry ends and benefits are denied. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 416.920(a)(4)(iv).

performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)-(g); 20 C.F.R. § 416.920(a)-(g).

The ALJ found that Ms. Trafford had not engaged in substantial gainful activity since the onset of her alleged disability. (Tr. 64) Her depression, panic disorder, degenerative disc disease, osteoarthritis, and seizure disorder were deemed severe impairments. (Tr. 64-65) According to the ALJ, Ms. Trafford did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 65-67)

The ALJ determined that Ms. Trafford retained the residual functional capacity ("RFC") to perform a limited range of sedentary work.[3] (Tr. 67-72) With this RFC, Ms. Trafford could not perform her past relevant work. (Tr. 72) Based on the testimony of the vocational expert, however, the ALJ found that Ms. Trafford could perform

---

[3] The ALJ found that Ms. Trafford retained the RFC to frequently lift or carry less than ten pounds, and occasionally lift or carry ten pounds; push or pull within the limits for lifting and carrying; sit with normal breaks for a total of six hours in an eight-hour work day; and stand or walk with normal breaks for at least two hours in an eight-hour work day. Ms. Trafford could not climb ladders, scaffolds, or ropes, and should not be exposed to unprotected heights or dangerous machinery. She could not drive or carry a firearm. Ms. Trafford could occasionally climb ramps and stairs, stoop, bend, crouch, crawl, kneel, or balance. She must work where instructions are simple and non-complex, interpersonal contact with coworkers and the public is incidental to the work performed, the complexity of tasks is learned and performed by rote, the work is routine and repetitive, there are few variables, little judgment is required, and the supervision is simple, direct, and concrete. (Tr. 42-43, 67)

significant numbers of jobs existing in the national economy as an assembly worker or circuit board assembler. (Tr. 42-45, 73-74)

### III. <u>Analysis:</u>

    A.    *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the administrative record to support the decision. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); 42 U.S.C. § 405(g). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision. The decision cannot be reversed, however, "simply because some evidence may support the opposite conclusion." *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009)(quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

    B.    *Plaintiff's Arguments*

Ms. Trafford claims the findings of the ALJ are not supported by substantial evidence because: (1) the ALJ's summation of evidence was not a fair representation of the medical record; (2) the ALJ erred in failing to fully and fairly develop the record; and (3) the ALJ erred in the weight she afforded Dr. Seme's opinion. (#11)

C.  *The Medical Record*

Ms. Trafford argues that the ALJ's decision did not fairly take into consideration the medical record. (#11, p. 11-12)  First, she argues that the ALJ unfairly concluded that her balance and coordination issues were the result of sinus problems. (Tr. 69)  The genesis of this issue was a doctor visit on April 25, 2006, where Ms. Trafford complained of balance, coordination, and vision problems. (Tr. 332)

At the visit, Clifford L. Evans, M.D., noted that an MRI revealed sinus problems. (Tr. 332)  Dr. Evans also advised Ms. Trafford to stop driving. (Tr. 333)  Dr. Evans did not specifically find that the sinus problems caused the balance, coordination, and vision issues.  Besides a possible inner ear problem, however, no other explanation for these problems appears in the record.[4]  There were no tests (other than the MRI that showed sinus problems) conducted regarding these issues.  In addition, at the next visit on May 12, 2006, there was no mention of balance, coordination, or vision problems. (Tr. 330-331)

Regardless of what caused the balance, coordination, and vision problems, the ALJ accounted for these problems in the RFC determination.  The ALJ found that Ms.

---

[4] A doctor visit on July 17, 2006, indicates an inner ear problem and sinus pressure. (Tr. 514)  Almost two years later, a doctor notes "a history of Meniere disease." (Tr. 546, 549)  Meniere's disease could affect balance.  There are, however, no tests confirming Meniere's disease in the record.  The MRI "showed sinus problems." (Tr. 332)  There are also no diagnoses or treatments for Meniere's disease in the record.

Trafford could not drive, which was the only restriction Dr. Evans listed after noting the balance, coordination, and vision problems. (Tr. 67, 333)

The ALJ also found that Ms. Trafford could not work around unprotected heights or dangerous machinery, and could not climb ladders, scaffolds, or ropes. (Tr. 67) Regardless of the cause of these problems, or their lasting effect, the ALJ accounted for them in her opinion. Accordingly, there was no reversible error in how the ALJ accounted for this part of the medical record. See *McGinnis v. Chater*, 74 F.3d 873, 875 (8th Cir. 1996) (arguable deficiency in opinion-writing insufficient reason for remand when the deficiency has no effect on the outcome of the case).

Next, Ms Trafford takes issue with the ALJ's comment that Dr. Melissa Seme's opinions were not supported by testing. (#11, p. 12) This issue involves the weight assigned to Dr. Seme's opinion, which the Court will address in a following section. See Section E, *infra*.

Finally, Ms. Trafford takes issue with the ALJ's interpretation of Dr. Sam Boyd's medical opinions. (#11, p. 12) The ALJ discussed Dr. Boyd's mental status evaluation and stated, "[Dr. Boyd] expressed his opinion that the claimant's conditions could be improved with appropriate outpatient psychotherapy and medical management." (Tr. 70) Ms. Trafford argues that this is not a fair representation of Dr. Boyd's opinion. In the prognosis at issue, Dr. Boyd stated:

> Ms. [Trafford] is taking some psychotropic medications, but
> has received very little outpatient mental health treatment. In

6

>fact, her only outpatient mental health treatment consisted of
>three sessions of counseling with me in 2004. Therefore, with
>appropriate outpatient psychotherapy and medication
>management, it is possible that Ms. [Trafford's] condition
>could improve somewhat during the next 12 months.
>However, due to the chronicity and severity of her disorders,
>it is unlikely that she would show significant improvement.
>(Tr. 392)

After reviewing the record, it is clear the ALJ did not interpret Dr. Boyd's opinion unfairly. The ALJ stated that Ms. Trafford's conditions could be improved with appropriate outpatient psychotherapy and medical management. (Tr. 70) Dr. Boyd stated that Ms. Trafford's conditions could be improved somewhat, but significant improvement was unlikely. (Tr. 392) The ALJ did not repeat Dr. Boyd's specific wording in stating that Ms. Trafford's conditions could be improved *somewhat*, but neither did the ALJ conclude that Ms. Trafford's conditions could be improved significantly.

Ms. Trafford presents an interesting argument by first alleging longstanding, severe mental impairments; then seeking, as stated by Dr. Boyd, "very little outpatient mental health treatment"; and finally, faulting the ALJ for noting that psychotherapy and medication management could improve her condition. It is difficult to conceive how the ALJ's comment could be reversible error under these circumstances. Regardless, the ALJ found every mental diagnosis made by Dr. Boyd to be a severe impairment. (Tr. 64, 392) These findings square with Dr. Boyd's assessment that it would be unlikely for Ms. Trafford's conditions to improve significantly, even if she sought outpatient

psychotherapy and medication management. After reviewing the entire record, the Court cannot find error in the ALJ's discussion of the medical record.

D. *Development of the Record*

It is the ALJ's duty to develop the record fully and fairly. *Snead v. Barnhart*, 360 F.3d 834, 836-37 (8th Cir. 2004). This duty is independent of the claimant's burden to press his or her case. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (citation omitted). A duty to develop additional evidence arises when medical source evidence is inadequate to determine disability. 20 C.F.R. § 404.1512(e).

A claimant seeking to show that the record was inadequately developed by the ALJ must show, "both a failure to develop necessary evidence and unfairness or prejudice from that failure." *Combs v. Astrue*, 243 Fed. Appx. 200, 204 (8th Cir. 2007) (citing *Haley v. Massanari*, 258 F.3d 742, 749-50 (8th Cir. 2001)). "[R]eversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir.1995).

The record in this case contains almost 300 pages of medical records. (Tr. 235-364, 368-387, 420-523, 536-559) In addition, the record contains two separate mental status evaluations, a psychiatric review, and a mental RFC assessment. (Tr. 388-399, 402-415, 416-419, 527-532) Also, Ms. Trafford had an opportunity to provide evidence at the administrative hearing. (Tr. 6-47)

Despite the evidence in the record, Ms. Trafford argues that the ALJ should have acquired trigger point testing, a physical examination, and x-rays of her neck and back. (#11, p. 13) Aside from physical examinations, none of the other objective testing was ordered by Ms. Trafford's treating physicians.[5] Instead, as noted by the ALJ, it appears the treating physicians accepted Ms. Trafford's subjective allegations in lieu of objective testing.

Ms. Trafford had three years from her alleged disability onset until the administrative hearing to seek or request the objective testing she now argues was needed. She had another two years from the date of the ALJ's decision to the Appeals Council's denial of review. As far as the record shows, she never sought this testing, which indicates that the testing would not benefit her cause. See *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) (the fact that claimant's counsel did not obtain, or as far as the record shows, try to obtain, the items claimant complains were not part of the record suggests that the items had only minor importance). At a minimum, Ms. Trafford has failed to show any prejudice from the ALJ's failure to order additional testing.

There is no question, as the ALJ found, that Ms. Trafford's impairments caused physical limitations. The evidence in the record, however, is sufficient to support the

---

[5] Numerous physical examinations completed by Ms. Trafford's treating physicians were essentially normal. (Tr. 333, 335, 337, 341, 343, 347, 353, 355, 494, 496, 500, 502, 507, 510, 515, 517)

9

ALJ's RFC assessment. There is no evidence or indication that additional testing would result in a more limited RFC than the limited range of sedentary work found by the ALJ.

E.   *Medical Opinions*

Ms. Trafford argues, generally, that the ALJ erred in the weight afforded the opinion of one of her treating physicians, Melissa Seme, M.D.[6] (#11, p. 13-14) Ms. Trafford does not identify the specific opinion, the weight she believes the ALJ should have assigned it, or the effect assigning a different weight would have had on the ALJ's decision. Instead, Ms. Trafford simply argues that the Court should remand this case because the ALJ did not specifically assign weight to Dr. Seme's opinion.

The ALJ discussed Dr. Seme's treatment records and opinion in her decision. (Tr. 70) The ALJ then stated that she gave substantial weight to the opinions of the treating and examining physicians. (Tr. 71) The ALJ did not describe the specific weight given to Dr. Seme's opinion beyond this general statement.

It is clear from the RFC finding that the ALJ gave substantial weight to the treating physician opinions, including those of Dr. Seme. It is also clear, however, that the ALJ declined to give controlling weight to the opinions expressed by Dr. Seme in the Physical RFC Questionnaire. (Tr. 539-543) There was no error in this decision.

---

[6] Although not specifically identified by Ms. Trafford, it appears this argument involves the "Physical Residual Functional Capacity Questionnaire" completed by Dr. Seme on February 4, 2008. (Tr. 539-543)

Dr. Seme's Physical RFC Questionnaire is not entitled to controlling weight. See *Taylor v. Chater*, 118 F.3d 1274, 1279 (8th Cir. 1997) (residual functional capacity checklists, although admissible, are entitled to little weight in the evaluation of disability). The questionnaire is inconsistent with the medical record and some of Dr. Seme's own records. See *Finch v. Astrue*, 547 F.3d 933, 938 (8th Cir. 2008) (the ALJ may reject the opinion of any medical expert where it is inconsistent with the medical record as a whole).

For example, Dr. Seme stated that Ms. Trafford could never look up or hold her head in a static position. (Tr. 542) In an entire eight-hour workday, Dr. Seme noted that Ms. Trafford could look down or turn her head right or left for a maximum of 24 minutes.[7] (Tr. 542) Dr. Seme based her findings exclusively on her observations of Ms. Trafford's decreased range of motion and frequent shifting of position during examinations. (Tr. 539) Numerous physical examinations of Ms. Trafford's neck, however, were conducted, and all were normal. (Tr. 333, 335, 337, 341, 343, 353, 355, 496, 500, 507, 510, 517) Examinations by Dr. Seme of Ms. Trafford's neck were also normal. (Tr. 549, 551, 553) In fact, just a few days before completing the questionnaire, Dr. Seme noted no neck complaints or problems whatsoever. (Tr. 549)

---

[7] Dr. Seme found that Ms. Trafford could "rarely" look down or turn her head right or left. (Tr. 542) In the questionnaire, "rarely" meant 1% to 5% of an eight-hour workday. (Tr. 540) That corresponds to approximately 5 to 24 minutes of an eight-hour workday.

In the questionnaire, Dr. Seme also noted severe limitations in the use of hands, fingers, and arms. (Tr. 543) There is no explanation for these limitations in the medical record. Ms. Trafford stated that her medications impaired her motor skills and the use of her hands. (Tr. 157) Dr. Seme, however, noted no problems with Ms. Trafford's extremities in her physical examinations. (Tr. 546, 549, 553)

It is clear, as the ALJ found, that Ms. Trafford suffered a number of severe, limiting impairments. The ALJ's RFC finding provided a quite limited range of sedentary work, the lowest possible exertional level of work. In making the RFC determination, the ALJ adequately discussed and weighed the various medical source records. The ALJ's RFC determination accounted for Ms. Trafford's numerous credible limitations. Despite the extremely limited RFC, however, a significant number of jobs existed that Ms. Trafford was capable of performing.

## IV.    Conclusion:

The Court has reviewed all of the evidence in the record, including all of the medical evidence, the assessment of the consulting physicians, and the hearing transcript. There is sufficient evidence in the record to support the Commissioner's determination that Jennifer Trafford retained the residual functional capacity to perform a significant number of jobs existing in the national economy. Accordingly, Ms. Trafford's appeal is DENIED. The Clerk is directed to close the case.

IT IS SO ORDERED this 26th day of July, 2011.

_____
UNITED STATES MAGISTRATE JUDGE